1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF NEVADA

10                          * * *

11    UNITED STATES OF AMERICA,            )
                                           )    Case No. 2:16-cr-00246-GMN-NJK
12                    Plaintiff,           )
                                           )    ORDER AND
13    vs.                                  )    REPORT &  RECOMMENDATION
                                           )
14    ROGELIO PAYAN,                       )
                                           )    (Docket No. 42)
15                    Defendant.           )
      ─────────────────────────────────   )
16

17          This matter was referred to the undersigned Magistrate Judge on Defendant Rogelio Payan's

18    motion to suppress.  Docket No. 42.  The Court has considered  Defendant's motion, the United

19    States' response, and Defendant's reply.  Docket Nos. 42, 65, 66.

20    **I.**     **BACKGROUND**

21          On December 22, 2015, during the investigation of this matter, North Las Vegas Police

22    Officer D. Fellig applied for a search warrant for Defendant's residence.  Docket No. 42-1 at 5-15.

23    The supporting affidavit sets forth substantial detail surrounding the investigation, including

24    information given to law enforcement by two confidential informants (CIs).  *Id.*

25          The search warrant affidavit states that, during the week of December 13, 2015, Officers

26    Ochoa and Forsberg made contact with CI #1.  Docket No. 42-1 at 6.  CI #1 has provided law

27    enforcement with "specific, detailed information[] that has been independently corroborated by

28    investigators.  The information has included crimes against persons, weapons offenses and narcotic

1    related activity.  Based on the information provided, criminal investigations have been initiated by

2    law enforcement and CI #1 has been deemed reliable." *Id.*

3           The affidavit further states that CI #1 has "corroborated previous information obtained by

4    law enforcement, about [Defendant] and his involvement in trafficking narcotics and firearms.  CI

5    #1 outlined [Defendant's] previous criminal history and physical description, to include gang related

6    tattoos, which was later substantiated in a records check." *Id.*  Further, the affidavit states that, in

7    a prior investigation, "CI #1 has provided information corroborating that the target of possession of

8    a firearm by a prohibited person offense, possessed the weapon after it was obtained in a residential

9    burglary.  The firearm was subsequently recovered in a resulting investigation and the intelligence

10   provided by CI #1[] allowed law enforcement to conduct further appropriate follow up

11   investigation." *Id.* at 7.

12          The affidavit states that, on or about December 11, 2015, CI #1 was the back seat passenger

13   in a vehicle traveling in North Las Vegas.  *Id.*  Initially, CI #1 was asleep, but awoke when the rear

14   of the vehicle in which he/she was riding was struck by another vehicle.  *Id.*  After CI #1 observed

15   that the other vehicle was driven by Defendant, he/she believed that the vehicle intentionally struck

16   the vehicle in which he/she was riding.  *Id.*  CI #1 provided Defendant's street name, and stated that

17   Defendant was operating an orange Ford SUV, which CI #1 knew belonged to Defendant, and knew

18   that Defendant frequently drove said vehicle.  *Id.*  As the vehicles traveled, CI #1 heard gunfire, and

19   saw that Defendant was firing a dark-colored semi-automatic firearm in the direction of the vehicle

20   in which CI #1 was riding.  *Id.*  CI #1 stated that he/she saw Defendant fire numerous rounds over

21   a period of several seconds, and also saw CI #2 return fire.  *Id.*  CI #1 determined that no one had

22   been hit, and the vehicle in which CI #1 was riding then fled from Defendant's vehicle.  *Id.* at 8.

23          The affidavit states that CI #1 stated that Defendant is a member of the "documented criminal

24   street gang, San Chuco's and that [Defendant] had a reputation and propensity for violence." *Id.*

25   CI "1 knows that Defendant had been convicted in the past of weapon-related offenses, and had

26   served time in the Federal Bureau of Prisons. *Id.*

27   . . . .

28   . . . .

- 2 -

1      After CI #1 made these statements to Officers Forsberg and Ochoa, Officer Fellig, the affiant,

2  made contact with CI #2. *Id*. The affidavit states that CI #2 has "provided law enforcement with

3  specific, detailed information, that has been independently corroborated by investigators. The

4  information has also consisted of crimes against person offenses and weapon related offenses. Based

5  on the information provided by CI #2, criminal investigations have been initiated by law enforcement

6  and the informant has been deemed reliable." *Id*. Specifically, the affidavit states that CI #2

7  previously provided the affiant with specific information of a male who was constructing improvised

8  zip guns that were capable of firing a small caliber round. *Id*. CI #2 gave the affiant the male's exact

9  location, as well as information that the male was also in possession of a compact rifle, shotgun, and

10  revolver. *Id*. When a search warrant was later executed, the weapons CI #2 stated the male

11  possessed were recovered. *Id*.

12      Additionally, the affidavit states that CI #2 provided information in a separate investigation,

13  identifying three individuals who had been present for a homicide several years earlier. *Id*.

14  Independent investigation confirmed CI #2's information. *Id*. Further, the affidavit states that CI #2

15  provided specific information in an investigation into a male who was in possession of numerous

16  firearms that were being trafficked to criminal street gang members." *Id*. at 9. Surveillance on the

17  specific location provided by CI #2 corroborated his/her information and, based on that information,

18  an investigation was initiated. *Id*.

19      The affidavit states that CI #2 told affiant that, on or about December 11, 2015, he/she was

20  operating a vehicle in the area of East Hickey and Statz. *Id*. CI #2 observed Defendant charging

21  his/her vehicle while on foot. *Id*. CI #2 then saw Defendant enter an orange Ford Explorer and

22  pursue his/her vehicle. *Id*. Defendant's vehicle then intentionally struck CI #2's vehicle and, as the

23  vehicles continued to travel, Defendant "retrieved a black semi automatic pistol[] with his right hand

24  and began to discharge the firearm" at the CI #2's vehicle. *Id*. CI #2 stated that Defendant fired one

25  to three shots, and that his weapon was a "Glock" type pistol. *Id*. CI #2 further stated that, as the

26  cars continued to travel northbound on Statz, an unknown male who was standing near a parked

27  vehicle produced a pistol and, without provocation, fired at CI #2's vehicle. *Id*. at 9-10. CI #2 stated

28  that no one in his/her vehicle was struck by gunfire and that the vehicle was successful in fleeing the

1   area. *Id*. at 10. CI #2 denied returning gunfire during the incident. *Id*. Additionally, CI #2 stated

2   that Defendant had started intimidating him/her for an unknown reason in the days prior to the

3   shooting, but could not identify the specific cause of the shooting. *Id*.

4         The affidavit states that CI #2 stated he/she has physically been inside Defendant's residence

5   on East Hickey in the month of December 2015. *Id*. Further, he/she has been inside that location

6   in excess of ten times. *Id*. CI #2 noted that the residence has mounted visual surveillance

7   equipment. *Id*. This information was corroborated by law enforcement. *Id*. at 11. Additionally, CI

8   #2 has observed numerous firearms inside Defendant's residence, including a black Glock pistol and

9   a high caliber rifle. *Id.* at 10.

10         Both informants identified Defendant from a photograph as the person who fired at the

11   vehicle in which they were riding. *Id*. The East Hickey residence is the listed address for both

12   Defendant and his brother. *Id*. Law enforcement officers, while conducting surveillance on this

13   residence, obtained information that Defendant "was involved in illegal narcotics trafficking, as well

14   as crimes against persons." *Id*. During the course of surveillance, Defendant was specifically

15   observed operating the orange Ford Explorer, which is registered to his wife at the East Hickey

16   address. *Id*. at 11. During the investigation, this vehicle was always operated by Defendant, and not

17   by his wife. *Id*. at 12. On December 10, 2015, prior to the shooting for which CI #1 and CI #2 gave

18   information to law enforcement, surveillance team members noted that the vehicle had no obvious

19   damage to its rear window or front end. *Id*. at 11. On December 15, 2015, however, after the

20   shooting, surveillance members saw that the vehicle had front end damage to the bumper, and that

21   the rear windshield was broken. *Id*. The damage to the Explorer was "consistent in appearance and

22   location on the body, with what was described by CI #2." *Id*.

23         The affidavit further notes that Defendant has numerous arrests for violent and weapon

24   offenses, and is a convicted person required to register. *Id*. at 11-12. Additionally, the affidavit

25   states that Defendant was arrested in June 2015 for sexual assault, kidnapping, assault with a deadly

26   weapon, and domestic battery against his wife. *Id*. at 12. Finally, the affidavit notes that numerous

27   illegal shooting calls were received by North Las Vegas Dispatch during the time that CI #1 and CI

28   #2 report that Defendant shot at their vehicle. *Id*.

After reviewing the affidavit, North Las Vegas Township Justice of the Peace Kalani Hoo issued a search warrant for Defendant's residence. *Id*. at 16-19. Law enforcement agents executed the search warrant on December 23, 2015. Docket No. 42 at 7. During the search of the residence, among other things, law enforcement recovered a Glock handgun. Docket No. 42-2 at 18.

On August 9, 2016, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Docket No. 1.

On April 5, 2017, Defendant filed a motion to suppress the evidence seized during the execution of the search warrant. Docket No. 42.

## II. <u>ANALYSIS</u>

### A. *Franks* **Hearing**

In the first portion of his motion, Defendant states that Officer Fellig made materials misrepresentations and omissions in his search warrant affidavit and, therefore, asks the Court to conduct an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to determine whether the affidavit was sufficient to establish probable cause.

Specifically, Defendant alleges that Officer Fellig failed to inform the issuing court of the informants' criminal histories. Docket No. 42 at 9-10. Defendant contends that there is reason to believe that the CIs have criminal histories "given their intimate knowledge about contraband, illegal activities, and criminal street gangs, as well as their conflicting accounts of the shooting." *Id*. at 9. Therefore, Defendant suggests that criminal histories should have been disclosed in the affidavit, in case either CI has a conviction of a crime involving dishonesty. *Id*. Defendant submits that Officer Fellig's "failure to alert the issuing court" of the criminal histories of the CIs "amounted to material omissions." *Id*. at 10. Defendant next contends that Officer Fellig failed to provide context regarding the shooting of December 11, 2015, that would inform the issuing court of the underlying circumstances of the shooting. *Id*. Defendant contends that the conflicting information given by the CIs about whether CI #2 fired back at him during the shooting, and whether a pedestrian shot at them needs context. *Id*.

. . . .

1    Defendant further contends that Officer Fellig misrepresented the NLVPD call log

2    information from the night of December 11, 2015. *Id*. at 11-12.  Defendant submits that the affidavit

3    does not contain a period of time regarding the shooting, and that the call logs provided in discovery

4    do not support the CIs' information.   *Id*.   Next, Defendant contends that Officer Fellig made a

5    material misrepresentation in stating that police found the CIs' information to be credible, when he

6    also stated in an internal report dated January 5, 2016 that he lacked probable cause to arrest

7    Defendant for the shooting.  *Id*. at 12.

8    In response, the United States contends that the search warrant was constitutionally valid, and

9    that Defendant has not made the requisite showing to entitle him to a *Franks* hearing.  Docket No.

10   65 at 9-4.  The United States submits that Defendant has failed to make an sufficient showing that

11   Officer Fellig's sworn affidavit contained "material misrepresentations or omissions that were

12   deliberately or recklessly made." *Id*. at 6.  Specifically, the United States submits that Officer Fellig

13   included detailed prior instances where each CI was deemed reliable, as well as the details of the

14   contradictory statements given by each CI regarding whether CI #2 returned fire, so that the issuing

15   court could make an independent determination regarding probable cause.  *Id*.  Further, the United

16   States contends that Officer Fellig sufficiently informed the issuing court of the facts and

17   circumstances surrounding the December 11, 2015, shooting.  *Id*. at 7.  Additionally, the United

18   States notes that Defendant's arguments are focused on the veracity of the CIs, rather than the

19   veracity of the affiant, and the Court must consider the veracity of the affiant in making its

20   determination.  *Id*.  Further, the United States submits that Defendant has misinterpreted an internal

21   police document in arguing that Officer Fellig did not have probable cause to search his residence.

22   *Id*. at 8.  The United States submits that Defendant refers to a document in relation to the shooting

23   itself and that Officer Fellig needed to protect the identities of the CIs, and therefore did not intend

24   to disclose them in order to arrest Defendant for the shooting.  *Id*.  That decision, the United States

25   submits, has "nothing to do with the probable cause determination as to Officer Fellig's search

26   warrant affidavit."  *Id*.  The United States therefore submits that Defendant has failed to meet the

27   requirement for a *Franks* hearing.  *Id*. at 8-9.

28   . . . .

1    In reply, Defendant contends that he has met the standard for a *Franks* hearing.  Docket No.

2  66 at 2.  Defendant submits that the United States' response demonstrates the need for a hearing.

3  *Id*. at 2-4.  Further, Defendant submits, with no authority, that Officer Fellig "vouched for the CIs'

4  credibility and reliability" and, therefore, his credibility is at issue.  *Id*. at 4.

5    In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court addressed at length whether

6  a false statement by a government affiant invalidates a search warrant.  *United States v. Hammett*,

7  236 F.3d 1054, 1058 (9th Cir. 2001) (citation omitted).  Under certain circumstances, a defendant

8  is entitled to an evidentiary hearing to afford the defendant an opportunity to attack the veracity of

9  a facially-valid affidavit used to support a search warrant.  A defendant can challenge a facially valid

10  affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally

11  or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding

12  of probable cause without the allegedly false information."  *United States v. Reeves*, 210 F.3d 1041,

13  1044 (9th Cir. 2000) (*citing United States v. Stanert,* 762 F.2d 775, 780-81 (9th Cir. 1985)).

14    Before a criminal defendant is entitled to go beneath the search warrant to obtain additional

15  information concerning the police investigation and an informant, he or she is required to make a

16  substantial  threshold  showing.    A  defendant's  preliminary  showing  cannot  be  "merely

17  conclusory."  *Reeves*, 210 F.3d at 1044.  "There must be allegations of deliberate falsehood or

18  reckless disregard for the truth, and these allegations must be accompanied by an offer of proof."

19  *Hammett*, 236 F.3d at 1058 (*quoting Franks*, 438 U.S. at 171).  "To justify a hearing, a defendant

20  must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and

21  accompany such a claim with a detailed offer of proof."  *United States v. Craighead*, 539 F.3d 1073,

22  1080 (9th Cir. 2008) (citation omitted).  See also *Franks*, 438 U.S. at 171 (given the assumption of

23  validity underlying   a supporting affidavit, a party moving for a *Franks* hearing must submit

24  "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must

25  be accompanied by an offer of proof").  The movant bears the burden of proof and must make a

26  substantial showing to support both elements. *See United States v. Garcia–Cruz*, 978 F.2d 537, 540

27  (9th Cir. 1992).

28  . . . .

Intentional or reckless omissions may provide grounds for a *Franks* hearing. *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007)); *see also United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate [judge] will draw. To allow a magistrate [judge] to be misled in such a manner could denude the probable cause requirement of all real meaning"). Although "[c]lear proof of deliberate or reckless omission is not required," a "[d]efendant 'must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reason for omitting facts in order to prove a deliberate falsehood or reckless disregard." *United States v. Souffront*, 338 F.3d 809, 822-23 (7th Cir. 2003). A defendant must also show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause existed." *Stanert*, 762 F.2d at 782. "[T]he omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search." *Craighead* 539 F.3d at 1081.

The Ninth Circuit has identified five requirements that a defendant must satisfy before he is entitled to a *Franks* hearing:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. DiCesare*, 765 F.2d 890, 894-895 (9th Cir. 1985)). Defendant has failed to satisfy all but the first requirement.

Defendant has alleged specifically which portions of the affidavit he submits contain either omissions or misstatements, which satisfies the first requirement. The Court finds, however, that Defendant has not made a substantial preliminary showing that the omissions and/or misstatements were deliberately or recklessly made, as per the second requirement. Further, Defendant has not met the third requirement, as he fails to make a detailed offer of proof to accompany his allegations. Additionally, Defendant has not met the fourth requirement, as he challenges the veracity of the CIs, not the affiant. The Court is not persuaded by Defendant's contention that he is challenging the

1    affiant's veracity because the affiant vouched for the CIs, particularly where the affiant included the

2    conflicting statements made by the CIs regarding CI #2 returning fire.  "Allegations that statements

3    reported in the affidavit and made to the affiant are false are not sufficient to satisfy the requirements

4    for a *Franks* hearing unless the defendant contends that the affiant has misrepresented the statements

5    made by another."  *Perdomo*, 800 F.2d at 921.  *See also United States v. Staves*, 383 F.3d 977, 983

6    (9th Cir. 2004); *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) ("The offer of proof [for

7    a *Franks* hearing] must challenge the veracity of the affiant, not that of his informant").  Here,

8    Defendant has made no claim that Officer Fellig incorrectly reported the statements made to him by

9    either CI and, therefore, he has challenged the veracity of the CIs, not the affiant.

10         Finally, Defendant has failed to meet the fifth requirement, as he has not shown that the

11   challenged statements are necessary to probable cause.  Defendant submits that Officer Fellig did not

12   include the criminal histories of the CIs in his affidavit.  Even if Defendant had made the appropriate

13   showing that this omission was deliberately or recklessly made, however, when an affidavit omits an

14   informant's criminal history (if that history includes crimes of dishonesty), "additional evidence must

15   be included in the affidavit 'to bolster the informant's credibility or the reliability of the tip.'" United

16   States v. Elliot, 322 F.2d 710, 716 (9th Cir. 2003) (internal quotation omitted).  The Court therefore

17   finds that, even if either CI's criminal history contained crimes of dishonesty, the affidavit provided

18   enough information about their reliability that such omission does not impact probable cause.  *See*

19   *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000) (additional evidence in affidavit that

20   "informant had previously provided truthful and reliable information to police that led to three other

21   search warrants, narcotics arrest and convictions" outweighed concerns raised by undisclosed criminal

22   history).  Defendant also submits that the call logs do not support Officer Fellig's contention that the

23   shooting occurred.  The Court finds that no showing has been made that this is a misstatement that

24   was made intentionally or with reckless disregard for the truth and, in any event, the omission of the

25   call logs would not affect probable cause due to the statements of the Cis.

26         Finally, Officer Fellig's report, submitted on January 5, 2016, states that no victims came

27   forward at the time of the shooting.  Docket No. 42-1 at 3.  The United States submits that Officer

28   Fellig wanted to protect the CIs' identities.  The Court finds that this report does not show that Officer

Fellig made a knowing misrepresentation, or a misrepresentation in reckless disregard for the truth in the affidavit. Even if Defendant could make a preliminary showing, the Court finds that it would not be material.

Accordingly, Defendant has failed to show materiality - that the inclusion of the omissions and omission of other statements would negate the probable cause in the affidavit. The probable cause standard for a search warrant is whether, based on common sense considerations, there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The magistrate judge need not determine "that the evidence is more likely than not to be found where the search takes place.... The magistrate [judge] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) (citation and internal quotation marks omitted). Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050–51 (9th Cir. 2007), citing *Gates*, 462 U.S. at 246 and *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) *(en banc)*.

Probable cause is "a fluid concept turning on the assessment of probabilities and the particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. *Gates*, 462 U.S. at 232. Probable cause does not deal with hard certainties, but with probabilities. *Id*. at 241; *see also Brinegar v. United States*, 338 U.S. 160, 175 (1949) (Probable cause deals with "probabilities" which are not technical, but factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians act). As noted above, the Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238. *Gates* makes clear that the determination of probable cause is made by examining the "totality of the circumstances." *Id*. The United States Supreme Court has repeatedly emphasized that the probable cause standard is a "practical, non-technical conception." *Brinegar,* 338 U.S. at 175.

. . . .

1    The *Gates* decision made it clear that a court's decision regarding probable cause should be

2 given great deference. The duty of a reviewing court is to insure that the issuing court had a

3 substantial basis for concluding that probable cause existed. A reviewing court is required to examine

4 all circumstances set forth in the affidavit, and in doubtful cases, to give preference to the validity of

5 the warrant. *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied*, 474 U.S. 847

6 (1985).

7    The Supreme Court has declined to articulate a "neat set of legal rules" for evaluating

8 probable cause, *id*. at 232, and instead has instructed magistrate judges to determine probable cause

9 by considering the "totality-of-the-circumstances," *Gates*, 462 U.S. at 230. In issuing a search

10 warrant, the magistrate judge simply must determine whether there is a "fair probability" that

11 evidence of a crime will be found. *Id*., 462 U.S. at 238, 246. In looking at the totality of the

12 circumstances, the Court finds that a fair probability existed that evidence of a crime would be

13 discovered in the location specified in the affidavit. *See Gates*, 462 U.S. at 230-31.

14    In sum, Defendant has not made a substantial preliminary showing that the affidavit contains

15 material misleading omissions and/or misstatements that, if included or deleted, would have negated

16 probable cause. Accordingly, the Court finds that a *Franks* hearing is unnecessary, and Defendant's

17 request for a *Franks* hearing is denied.

18    **B.    Nighttime Search Clause**

19    Defendant submits that the warrant is invalid because it contains a nighttime search clause and

20 the affidavit does not establish probable cause to justify a nighttime search. Docket No. 42 at 14.

21 Defendant submits that the justification for the nighttime search clause was to give law enforcement

22 the option of executing the search warrant when children were not around; however, Defendant

23 contends that children could be in the vicinity of the residence at any time. *Id*. at 15. Further,

24 Defendant submits that, while executing the search warrant, law enforcement blockaded the residence

25 with two armored vehicles, detonated flash bangs in the front yard, projected messages over a loud

26 speaker, and sent a robot into the home. *Id*. Defendant submits that these actions "undermine[] the

27 claim that police were concerned about the neighborhood children." *Id*. Finally, Defendant submits

28 without authority that, even though law enforcement executed the search warrant during daylight

1    hours, the warrant is nonetheless invalid due to the lack of probable cause for the nighttime search

2    clause. *Id*.

3         In response, the United States submits that the affidavit sufficiently justified the nighttime

4    search clause. Docket No. 65 at 9. The United States submits that an elementary school is located

5    approximately 0.4 miles away from Defendant's residence and that it is therefore "reasonable to

6    assume that children will be using the school property for activities while on winter break. For the

7    safety of the children[,] the search warrant was executed during the nighttime." *Id*. The United States

8    further submits that the nighttime search requirement is based on a federal rule, rather than a

9    constitutional mandate. *Id*. Therefore, even if the Court finds that the affidavit did not sufficiently

10   justify the nighttime search clause, the United States contends that the search itself was constitutional

11   and the evidence recovered during the search should not be suppressed. *Id*. at 10.

12        In reply, Defendant submits that the discovery indicates the warrant was not executed at night,

13   but the United States' response brief indicates it was executed at night. Docket No. 66 at 5-6.

14   Defendant therefore submits that a hearing is necessary "to determine when the search occurred and

15   whether exigent circumstances justified an intrusive nighttime search." *Id*. at 5.

16        The search warrant affidavit states

17        Affiant requests that a night time clause be authorized due to the fact that
     [Defendant's residence] is located within a residential neighborhood, numerous
18   children are absent from local schools for winter break, on 12/22/15 at approximately
     0800 hours, children were observed walking within close proximity to [Defendant's
19   residence], Tom Williams Elementary School is located within approximately 0.4
     miles from [Defendant's residence] and its [sic] reasonable to assume that children
20   will be utilizing the schools [sic] property for activities while on winter break. A
     nighttime clause would give Affiant the option of serving the search warrant when it
21   would not endanger these innocent children.

22   Docket No. 42-1 at 14.

23        Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) states, in relevant part, that a search

24   warrant must command the law enforcement officer to "execute the warrant during the daytime,

25   unless the judge for good cause expressly authorizes execution at another time[.] "'Daytime' means

26   the hours between 6:00 a.m. and 10:00 p.m. according to local time." Fed.R.Crim.P. 41(a)(2)(B).

27   The Ninth Circuit has stated that, unless a clear constitutional violation occurs, failure to comply with

28   Rule 41 "requires suppression of evidence only where, (1) there was 'prejudice' in the sense that the

1    search might not have occurred or would not have been so abrasive if the Rule had been followed,

2    or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United*

3    *States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981) (internal citation and quotation marks

4    omitted). *See also United States v. Ritter*, 752 F.2d 435, 441 (9th Cir. 1985) ("the settled rule in the

5    Ninth Circuit is that a purely technical violation of Rule 41 does not require the suppression of

6    evidence otherwise legally obtained")."[A]lthough the procedural steps enumerated in Rule 41(d) are

7    important and should not be disregarded, they are ministerial and '[a]bsent a showing of prejudice,

8    irregularities in these procedures do not void an otherwise valid search.'" *Frisby v. United States*,

9    79 F.3d 29, 32 (6th Cir. 1996) (quoting *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir.1971)).

10       The Court rejects Defendant's argument that a nighttime clause can be approved only for

11    exigent circumstances, as the plain language of the rule states that the issuing judge must find that

12    good cause exists for the clause. Fed.R.Crim.P. 41(e)(2)(A)(ii). Additionally, the case that Defendant

13    cites for that proposition cites the rule as requiring reasonable cause for a nighttime clause and states

14    that the rule "has been interpreted to require both specific authorization for an intrusive nighttime

15    search, and that sufficient facts in the affidavit must support" the magistrate judge's authorization."

16    *Stefanson*, 648 F.2d at 1237. Further, the Court finds that Officer Fellig's statements in the affidavit

17    regarding the presence of innocent children near Defendant's residence, the elementary school less

18    than half a mile away, the reasonable belief that children would use the elementary school's property

19    during winter break, and his desire not to endanger such innocent children constitutes good cause for

20    the issuance of a nighttime search clause. Accordingly, whether the search actually occurred at night

21    or not is not relevant.

22       In any event, even if the Court found that good cause did not exist for the issuance of the

23    nighttime clause, the remedy is not suppression. The Court has already found that probable cause

24    exists for the issuance of the search warrant, thus the search was valid. Further, Defendant has not

25    even attempted to demonstrate any sort of prejudice, much less the type required by the caselaw,

26    resulting from the nighttime clause and the possible nighttime search. Therefore, exclusion of the

27    evidence is not appropriate. *See Stefanson,* 648 F.2d at 1235; *United States v. Searp*, 586 F.2d 1117,

28    1125 (6th Cir. 1978).

1    **ORDER**

2    Based on the foregoing and good cause appearing therefore,

3    IT IS HEREBY ORDERED that Defendant's request for a *Franks* hearing is **DENIED**.

4    **RECOMMENDATION**

5    Based on the foregoing and good cause appearing therefore,

6    IT IS RECOMMENDED that Defendant's Motion to Suppress be **DENIED**.

7    **NOTICE**

8    Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be**

9    **in writing and filed with the Clerk of the Court within 14 days of service of this document.** The

10   Supreme Court has held that the courts of appeal may determine that an appeal has been waived due

11   to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).

12   This Circuit has also held that (1) failure to file objections within the specified time and (2) failure

13   to properly address and brief the objectionable issues waives the right to appeal the District Court's

14   order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d

15   1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

16   DATED this 15th day of August, 2017.

17

18

19   _____

20   NANCY J. KOPPE
     United States Magistrate Judge

21

22

23

24

25

26

27

28